May it please the Court, Ms. Jennings, Brad Hansen for Marlin Thomas. I'll start with a point, what is likely a point of agreement, and that is that this is a procedurally very unusual case. We have a defendant who has been serving terms of supervised release stemming from a heroin conviction, but many of the special conditions that he's been dealing with stem from a sex trafficking conviction for which he was originally sentenced to life in prison, but of course this Court vacated that conviction. And on top of that, the District Court added many of the conditions against Mr. Thomas, essentially when he was released from prison on the heroin conviction after the sex trafficking conviction was vacated. And we're here today to, what I think is just a modest request, to appeal and claim that the District Court erred with respect to parts of two of the 23 special conditions of release that were imposed in this case. I'll start with what I think is probably the most interesting legal issue, and it may be outcome determinative and may have the broadest impact beyond Mr. Thomas' case, and that is the standard of review that applies to Mr. Thomas' challenge. Just to come out and say it, I think that with respect to the challenge to the location monitoring slash curfew condition, the Court should apply abuse of discretion review. And to the District Court not accepting Mr. Thomas' child from the provision saying that he could not have any contact with children, we think that's de novo review because that has constitutional implications. Now the government has argued with respect to the location monitoring slash curfew condition that Mr. Thomas is procedurally barred from challenging that because he did not object to that when it was first imposed by the District Court, and of course we disagree with that. Mr. Thomas did object in the most recent revocation, correct? So in the revocation that we're reviewing, he objected to both of these conditions, correct? Yes, he did. I think the government asserts that he didn't object to the curfew part of the location monitoring slash curfew condition, but we agree with you, Your Honor, on that. Now with respect to the procedural default or procedural bar argument, the government relies extensively on three cases from this Court, Miller, Simpson, and Thomas. Miller is probably the most important case because that's what Simpson and Thomas rely on, but Miller is not apposite to this particular situation. In Miller, the defendant had been sentenced to prison, conditions of release were imposed, and then there's a revocation proceeding. And the defendant took the revocation proceeding as an opportunity to argue that he should not be revoked because the original conditions were invalid. And that is a collateral attack in the same sense that a defendant accused a felon in possession of a firearm can't go back and say, well, the felony was invalid and thus I'm not guilty of felon in possession of a firearm. That's not what Mr. Thomas is doing here. He's not alleging that the revocation was inappropriate because of some flaw with the conditions that were imposed against him. He's arguing that on this now term of supervised release, he should not be subject to all of the conditions that the district imposed. So Miller is not apposite. It becomes confusing because Simpson has one sentence in which Miller is cited and the Court says a defendant, this defendant is essentially using his challenge to supervised release conditions as an improper collateral attack. And was Simpson the one where they hadn't raised it below, I think? In that case, do you recall that? Right, that's correct. So that one too is not quite like what we have here. Right. And then after the Simpson court cites Miller, it goes on to consider the validity of the conditions anyway. So there was review applied. It wasn't considered a procedural bar in that case. And then Thomas, of course, is an unpublished disposition. It's not binding on this court without much reasoning. So the basis for the government's argument that this is some sort of procedural bar is flawed because the cases don't support it. It's also, it doesn't really give credence to the nature of a supervised release proceeding. In my view, a district court is always required, even if it's a second or a third revocation, to consider 3583 and the relevant 3553A factors in deciding what conditions are appropriate. Meaning the district court doesn't get a pass just because it ordered a condition before. It just can't robotically do it again. And so it would be weird to say that a defendant is procedurally barred from challenging conditions under that circumstance. Now as I said, the government argues that Mr. Thomas did not object to the curfew portion of the location monitoring slash curfew condition. It's true that in this latest revocation proceeding, Mr. Thomas' attorney did not mention the word curfew. But if you look at the objection, the defense attorney says we object to the second condition, the location monitoring condition, and specifically the lack of an ending point for it. And to be clear, that's what we're contesting is the fact that the district court did not impose any sort of temporal limitation on the location monitoring slash curfew. Conditions are frequently imposed for GPS without a terminus, right? And the idea is that if the person under the supervisee complies and things go well and everything's going okay, he can come in at any time and seek a modification saying it's no longer necessary. And so where does this idea that there has to be a termination date come from? I agree, Judge Erickson, that there's not in every case have to be a termination date. Here I think context is very important because as I said, the district court imposed 23 special conditions of supervised release against Mr. Thomas. One of the conditions requires him to live in a halfway house for one year with no credit for any amount of time that the Bureau of Prisons puts him in a halfway house at the end of his term of supervised release. So in context, of course, Mr. Thomas is going to be likely subject to location monitoring during that one-year period. It just becomes too much, in our view, in the scope of all of the conditions that are imposed against him to have him subject to monitoring for an indeterminate amount of time. Does it matter that Judge Rose says this is the most dangerous person I've ever seen? Well, I mean, the judges of course. You have a judge who's been around a long time and they're looking at this case and the convictions were not set aside because the evidence was insufficient. The convictions were set aside because there was a plea agreement. And so, I mean, you could take a look at all that and say this is just an exceptionally dangerous person and we now have a person who's been revoked, right? And so the question becomes, you know, really, is there an abuse of discretion in imposing this condition? And what's your best argument for why it is? I mean, is it simply just that it needs a termination date? We think it needs a termination date, again, in the context of all of the conditions that Mr. Thomas is subject to. I know the concern is that he would go back to sex trafficking. I know that. But he's already subject to conditions where he can't have any contact with minors. He can't be involved with individuals involved in prostitution. He can't have a computer or a smartphone of any sort for one year into his term of supervised release without the permission of the probation office. And then after that, his computer or smartphone is going to be monitored. So he's going to be dealing with a lot and I just think you're setting a defendant up for failure if you put too many conditions on a defendant like this, including the inability to see your own kid without permission of the probation office. When that child was obviously not involved in the sex trafficking conviction, it's a male. Have we upheld that kind of a condition before? Do we have some precedent that says that so long as you can get permission from the probation office to see your children, that that's sufficient? How is your case different than what we've seen before? Sure. And the answer to your question, Judge Kelly, is yes. The difference is that it's predominantly in child pornography cases where the victims are obviously children. Here we have a case where Mr. Thomas, the evidence suggests he victimized a number of women, including some minors, but not this is a male, this is his son. It's different in our view. Does that affect your constitutional argument? In other words, does your constitutional argument look different because of the facts here, that it's not, as you've described, a child pornography or production case? Or is it the same argument for if he had had those kinds of convictions, does the constitutional argument sort of carry the same weight? It's the same argument. We view it as de novo review for this court. We think it's stronger, though, because there's just no indication that this male, now I think he's going to be 14 this year, a year-old child, has any connection to what Mr. Thomas did in the past. So if there are no further questions, I'd ask to reserve the remainder of my time for rebuttal. Thank you. Ms. Jennings? May it please the Court? Feel free to adjust that as you need to. Thank you, Your Honor. I think he said it was at the highest level. It probably needs to come down a little bit. May it please the Court? Mr. Hanson? Your Honors, the evidence in the record before the Court overwhelmingly establishes that Mr. Thomas was a serial violator of his supervised release conditions, that he engaged repeatedly and aggressively in the exact type of criminal activity that the conditions were designed to thwart, which in this case was prostitution because of Mr. Thomas' established sex-trafficking history. Because of that, it is established in the record that the District Court properly exercised its discretion on this revocation hearing of reimposing the GPS condition with curfew until further order of the Court, as well as the condition that Mr. Thomas obtained prior approval before contacting any minors or his son, as well as EB, who is the mother of the minor's son in this case. Turning first to the GPS monitoring and the curfew condition, what's important for this Court to understand is not only are these conditions related to the sex-trafficking conduct that's established in the record, it also relates back to the defendant's drug conviction. When this defendant came out on supervised release after his convictions were vacated, he was a drug conspiracy defendant. In Judge Jarvie's sentencing hearing, he made the explicit finding that the drug and prostitution activity alleged of the offense conduct is inextricably intertwined. He also made the finding that the drug quantity is relatively low, but, quote, the motivation here represents an enormous level of depravity, end quote. He also further in his judgment recorded that the reason that he was veering upward was the intermingling of the defendant's distribution of heroin in connection with prostitution and sex trafficking. So as Judge Rose is dealing with this defendant, she of course has all of the information from the now vacated convictions, but she also has this root in the original drug conviction as well. Can I ask a question about the GPS? My understanding of the GPS was in part because he went to a lot of public places to engage in sex trafficking, Wal-Mart, and other such places. I'm just wondering what the GPS was going to tell, when a lot of this activity was happening in public places, what it was going to tell the probation officer. Why the GPS? That one seems like a little bit odd. I know that a lot of defendants have it, but in this case it seemed odd. There's a lot of reasons for the GPS in this case. The reason you gave is one of those was that he was visiting not only public locations, but very specific locations where vulnerable populations are at, such as homeless shelters, recovery centers, areas where he might find people who are vulnerable. But on top of that, the most recent record of supervised release is very helpful as to why the GPS condition is necessary now. And that's because the defendant, Mr. Thomas, repeatedly lied to the probation office about probably one of the most important supervised release conditions, which is the phone in this case. He disabled the monitoring on the phone, so that essentially enabled him to have access to his tool, where he contacted hundreds of commercial sex workers while on supervised release. He had 132 separate chat thread messages with commercial sex workers between March and December. And the way that the probation office was able to figure out that he had that phone was using GPS monitoring. Because they could see generally his location, and they conducted surveillance at places like Nebraska Furniture Mart and the grocery store, where they observed Mr. Thomas on a cell phone that he had told them he didn't have. So GPS remains, even now, more than the original time of imposition, an extremely important tool for protecting the public to make sure that he's complying with those conditions of supervised release. Additionally, Mr. Thomas, when he came out, he was revoked once. He came out after a couple weeks in custody, and then after being revoked for meeting with commercial sex workers and engaging in prostitution, he immediately went back to that behavior. And again, how it was discovered was through this GPS monitoring. He had said in a recorded phone call, he had asked a sex worker he had previously been involved with in the first term of supervised release to meet him at what was shown to be an approved location for him. So knowing where Mr. Thomas is at is very important in order to keep the community safe for the probation office. With respect to the condition on the need to contact a probation office before speaking with his minor son, the government understands and recognizes that the case law says that the court has to look at that carefully. Because of course, we treat defendant's abilities to communicate with your families in a more important way than we do other rights. But here, Judge Rose has made a very explicit record on Mr. Thomas being a violent offender and that he has explicit, long-term, significant violence with the mother of this minor child, EB. And this isn't a one-time domestic abuse situation. She cited it in her findings. This is reports of long-term domestic abuse, including choking, throwing her up against a sink so hard that it broke the faucet. Does that reflect, though, on the child? Is there any evidence of any kind of mistreatment with the child? Well, in the government's view, we don't need to have an affirmative act of mistreatment of the child in order to take these, essentially ask the court to take requirements that there's an approval process before he contacts his child. What if this were, what if he had this child with another person that was never a victim of any kind of assaultive behavior, decent relationship, they're just not together? Would the government have a different view on whether or not Mr. Thomas could have regular contact with this minor son? The government would not have a different view. The government would continue to ask that there be, it's not a complete ban, it's simply that there's a pre-approval from the probation office. So the relationship with EB really doesn't matter. Regardless of that relationship, the government's going to say absolutely no minor, even a child with whom he has a good relationship and with whom he has a good relationship, I didn't say that right, has a good relationship with the other parent. Yes, and that's because, well, in addition to the violence aspect directly at EB, the defendant has a documented history against violence against women, but then we also have the district court's finding that he did sex traffic 19 women and children, one of them being a child. And in the case law, particularly in the... Was there one minor in the evidence? Yes. I'm trying to kind of figure out the outer bounds of this, of what it, when it is, what's the factual finding necessary to say, okay, this particular person is a possible danger to minors as opposed to a danger to others, adults, the commercial sex workers, the conduct that's been documented. And I think the case law helps somewhat with that in the Stelmacher case, which is a little bit of a similar situation because that person was a drug user in possession of a firearm where a similar pre-approval requirement was upheld. And there the court said that for prior decisions indicate that a criminal history involving sexual offenses against minors is sufficient to justify restrictions on contact with the defendant's own minor children. And I don't believe anywhere in their case law, there's a requirement that there be a showing to the defendant's own child or the particular sex of the victim or the particular age. I think in this case where it's not a total ban, but it's simply seeking permission beforehand, the focus of course is protecting the minor child and still allowing the defendant to have access, but of course protecting that minor when there is a history of abusing minors in some way or another. How does this end up playing out? I mean, have there, this fell sort of in and out of supervision. Have there been problems with making those arrangements and is it sort of a logistic concern as much of anything? Does the probation officer typically approve it if it's under some sort of standard conditions? How does this end up playing out? Do you get to see, do most folks get to see their kids so long as they set it up properly? In the specific, in this specific case, there's been no indication that while Mr. Thomas has been on supervised release that he has sought to see his son through the probation office. So I don't have anything on that particular point. In the record, however, if you do go through Judge Rose's comments, she makes very clear to Mr. Thomas. She says on the record, the probation office is going to work with you if you want to send him a birthday card, if you want to do X, Y, or Z. So given Judge Rose's comments, it seems that it's not without teeth what she's saying, which is if you work with the probation office, they will work with you to get to a place where you can have some communication with your child. I see that my time has expired and I can answer any other further questions from the court. Otherwise, thank you for the opportunity, Your Honor. Thank you. Just briefly to follow up on the question that Judge Kelly had, it's not in the record in this case, but to give the court some insight into what I see when a defendant is subject to a condition saying you can only see your kid with the permission of the probation office. Usually that involves having to arrange for a chaperone. Usually that involves having to work with some agency that acts as a chaperone, and usually that involves the defendant having to pay for it. And thus, it's essentially a roadblock for many defendants having any contact with their children because they just can't do that. Is that record ever made? Was there any effort to make a record on that here? I'm not saying, oh, you didn't make a record, but just sort of explore that sort of at the ground level. What does that mean, Your Honor, to go to the probation officer? Because that seems to be even more specific requirements that could be worked through, maybe appealed. But if there were actually obstacles that were so high, rough, and rocky that you really, as a practical matter, could never see your kid, that seems to be different than saying, hey, I'd like to see my kid this weekend. Okay, go to, you know, we're going to be at this park and we're going to be, you know, tossing a ball. Is there any effort to sort that out early on? There was no record made, Your Honor, but one option the court could have would be to send it back to the district court for a record to be made on what exactly this getting permission from the probation officer would actually mean. So we'd ask the court to reverse the two special conditions. Thank you. Thank you both. Appreciate your arguments. And you're right, it is a procedurally complex